## 13326

### McLAURIN v. HAMER

(164 S. E., 2)

412

*Messrs. J. P. Lane* and *Lide & McCandlish*, for appellant,

414

*Messrs. H. E. Davis* and *J. R. Coggeshall*, for respond-
ent,

January 13, 1932.

The opinion of the Court was delivered by Mr. Justice
Carter.

This action, commenced in the Court of Common Pleas
for Dillon County, October, 1929, is a suit for the alleged
purchase price of an equitable interest which the plaintiff
alleges he owned in certain Florida lands, and which he al-
leges he sold to the defendant. The defendant, in his an-
swer, denied having entered into the alleged contract of pur-
chase with the plaintiff and denied owing the plaintiff any
amount. Issues being joined the case was tried at the April,
1930, term of said Court before his Honor, Judge C. C.
Featherstone, and a jury. At the close of all of the testi-
mony, offered by the plaintiff and the defendant, the trial
Judge, of his own motion, directed a verdict for the defend-
ant, and from the judgment entered thereon, the plaintiff has
appealed to this Court.

The principal question raised by the exceptions,
which will be incorporated in the report of the case,
is : Was there a contract between the parties, such as
the law recognizes and will enforce, for a sale to the de-
fendant of the plaintiff's interest in the land referred to?

In order to better understand the questions involved, we quote herewith a letter written to the plaintiff, which the plaintiff has incorporated in his complaint:

"Mr. J. P. McLaurin,   "Orlando, Fla., Dec. 17, 1925.

"Dillon, S. C.

"Dear Sir:

"This is to acknowledge and receipt you for the payment of $2,500.00 on your subscription of $9,000.00 in purchase and development of the six hundred and seventy-five acres, more or less, of land in Orange County, Florida, better known as the 'Metcalf Estate' on Lake Butler, which was this day conveyed to C. A. Roberts and W. M. Hamer, trustees, by Robert C. Geigel.

"The purchase price of said lands being $432,000.00 and payable as follows:

| | |
|---|---:|
| Cash | $ 92,000.00 |
| August 1st, 1926 @ 7% | 40,000.00 |
| 1927 | 25,000.00 |
| 1928 | 50,000.00 |
| 1929 | 50,000.00 |
| 1930 | 50,000.00 |
| 1931 | 50,000.00 |
| 1932 | 75,000.00 |
| | $432,000.00 |

"The subscribers being

| | |
|---|---:|
| C. A. Roberts, Orlando, Fla. | $144,000.00 |
| W. M. Hamer, Orlando, Fla. | 98,000.00 |
| J. W. Hamer, Dillon, S. C. | 90,000.00 |
| H. W. Rogers, Dillon, S. C. | 50,000.00 |
| J. R. Rogers, Dillon, S. C. | 15,000.00 |
| J. P. McLaurin, Dillon, S. C. | 10,000.00 |
| Jno. C. Bethea, Dillon, S. C. | 8,000.00 |
| J. H. McLaurin, Dillon, S. C. | 9,000.00 |
| J. F. Thompson, Dillon, S. C. | 8,000.00 |
| | $432,000.00 |

"The above deed was taken in the names of C. A. Roberts and W. M. Hamer, trustees, as a matter of convenience for making any and all papers necessary in the transfer, sale and development of said land, from time to time, and as in their judgment may seem best.

"Each subscriber above named shall participate in the profits and contribute cash in the developments (such as making streets, side walks, installing lights, water, sewerage, surveys, taxes, etc.), in proportion to his subscription above made and his liability in accordingly.

"There are no agreements, understandings or obligations not herein written and failure to meet all further payments by subscribers when and as called for by the trustee shall forfeit by him all his interest as liquidated damages to those who comply with proportionate remittances."

"Yours truly,

"[Signed]   C. A. Roberts,
"[Signed]   W. M. Hamer, Trustee."

There was testimony to the effect that the plaintiff, in compliance with the terms stated in the above letter, paid unto the said trustees the following amounts: January 6, 1926, $2,500.00; July 20, 1926, $275.50; July 30, 1926, $926.00; September 10, 1926, $74.00. Later, October 19, 1926, the defendant wrote the following letter to his brother, J. W. Hamer, who resides at Dillon, S. C., and who had an interest in the original transaction:

"Orlando, Fla. 10—19—26.

"Dear Jim:

"I guess you are in Columbia but this will find (you omitted) last of week—I wrote you about Metcalf and since I have had talk with Roberts and suggested that he and I buy all of you out and he favored it too but said he could not pay cash right now—nor could any of us unless collections are better than anywhere I have been. Think can get notes secured, at 8 per cent., deferred payment and 8 per cent. per annum since you paid in your cash. So you see

boys at once and see what they would like to do before another call is made. If all decide to do this have each write me at once and you wire me 'all accept' and I will understand. In doing this I am advising neither way as I am here and you all there. If later big money were made it might look like I took advantage of situation—while, on the other hand a loss came I would regret your being in and I am frank to say I believe none of you would have gone in had I not done so and if any loss is to be had I had rather take it myself than to have any of you lose a cent. You had better read this to each one and let them use their own pleasure in acting. It puts me where I rather not advise—on account of uncertainties. If I were there I would act differently than when I am here. If you rather buy his little grove you like so well you might take it instead of anything else if you and he can agree on price. Unless you are going to stay here in winter *I would not buy any grove* and even if you were it would have to be at a bargain because they are risky, too. Attend to this *at once*. He thinks very highly of this property. Will look for night letter wire soon. "Love to all. Your Bro.

"W. M. HAMER."

It appears from the record that J. W. Hamer, to whom this letter was addressed, read the same to the plaintiff and afterward the plaintiff wrote the following letter to the defendant:

"Dillon, S. C., Oct. 27, 1926.

"Mr. Wm. M. Hamer,

"Orlando, Fla.

"Dear Sir:

"Mr. J. W. Hamer had me to read your letter to him in reference to the Metcalf property, and it is satisfactory to me to let you have my interest in it, and if you have any loose money I would be glad if I could get the cash for my part as I am surely in need of some, and if you can see your way clear to let me have it I will appreciate it. Anyway I am satisfied with your proposition.

"Yours truly,

"J. P. McLAURIN."

These letters, the letter written by the defendant to his brother J. W. Hamer, dated October 19, 1926, and the letter written by the plaintiff to the defendant, dated October 27, 1926, form the basis for the alleged contract of sale to the defendant of the plaintiff's interest in the said lands. The further correspondence between the parties, which was some time after the above-mentioned letters were written, simply sets forth the position of the parties; the plaintiff contending that the defendant contracted to purchase from him his interest in the land in question, and the defendant contending that there was no contract of sale or purchase entered into. At the close of the testimony his Honor, the trial Judge, made the following ruling in the case:

"Upon reflection, I do not think that the plaintiff has shown a contract. I was in doubt as to whether or not to grant the nonsuit, but I refused it in order that all of the testimony might be put in, and suggested to counsel that they renew the motion on a request for a directed verdict; so we now have the whole setting of the case.

"The plaintiff's case is bottomed on the letter of October 19th and the answer to that letter by the plaintiff. Take the letter of October 19th and, giving it a reasonable construction, what does it mean? Hamer said, 'Have had a talk with Roberts and suggested that he and I buy all of you out, and he favored it, too, but said he could not pay cash right now, nor could any of us unless collections are better than anywhere I've been. *Think* can get notes secured at eight per cent. deferred payments and eight per cent. per annum since you paid in your cash.'

"He then goes on to request that the parties let him know whether or not they are willing to sell.

"I am convinced that the letter was only intended to open up negotiations, and was not a definite, unconditional offer to buy. Roberts was vitally interested, because the letter said, 'Have had talk with Roberts,' 'Suggested that he and I buy all of you out,' but he (Roberts) said 'Could not pay cash, nor could any of.' *'Think,'* *'think,'* can get notes.

"The whole tenor of the letter indicated that the writer wanted his friends to let him know what they were willing to do, and that he and Roberts might be able to arrange to buy them out.

"Again, the plaintiff accepted *generally*. What could that mean? He hoped they could get up cash, which Hamer had said he could not do. Hamer had said, "Think we can get notes.' So conceding, for the sake of argument, that the offer was unconditional, what part of the offer did the plaintiff mean to accept? Clearly, that relating to the notes; which Hamer was not sure he could get. Who was to pass upon the security of the notes? When were they to mature? So, there were several things left open; the minds of the parties never met.

"Again, the plaintiff is suing for cash, which Hamer said he could not pay. No effort was made by plaintiff to get the notes. The action is for money. I am not placing my ruling, however, upon this ground. The Court might, and probably would, allow the necessary amendment; but I am placing my ruling squarely upon the ground that there was no unconditional, complete offer, the acceptance of which would make a contract. Before there could have been a contract, the minds of the parties would have had to get together on other matters, further negotiations would have been necessary.

"So, the motion for a directed verdict is granted and (to the jury) you will write on the back of this paper 'as directed by the Court, we find for the defendant' and the foreman will come forward and sign it."

Upon a careful study of the record of the case and the decisions applicable thereto, we are forced to the conclusion that the trial Judge made a proper ruling in the case. The offer contained in the defendant's letter, above quoted, was not, in our opinion, such an offer as could, by acceptance, be changed, converted or construed into a binding agreement of sale.

In this connection attention is called to the following statement of the rule in Ruling Case Law: "A contract is ordinarily formed by an offer and an acceptance. In order to constitute a proposal which may be converted into a contract by acceptance, the offer need not be addressed to a particular individual. A binding obligation may even originate in advertisements addressed to the general public. But to whomsoever it is addressed, an offer, to be binding, must be definite, although the offerer may be bound by an offer to sell which allows the offeree to determine the quantity which he will accept. An offer, to constitute a contract, must be one which is intended of itself to create legal relations on acceptance, and if it is an offer merely to open negotiations which may ultimately result in a contract it is not binding. An offer which can be converted into a contract by acceptance. Such a proposal may not be an offer to contract but merely a suggestion to induce offers by others. General offers must therefore be distinguished from general invitations to make offers. Performance of the conditions of the former makes a legally binding contract, whereas compliance with the requirements of the latter is nothing more than an offer, which may or may not be accepted by the other party. Care should be taken not to construe as offers letters which are intended merely as preliminary negotiations." Vol. 6, R. C. L. at page 600.

We also quote the following from Corpus Juris: "The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement must extend to all of the terms which the parties intend to introduce and *material terms cannot be left for future settlement.*" (Italics added.) 13 Corpus Juris, par. 100.

The plaintiff, in our opinion, has not brought himself within this rule.

Attention is also called to the following decisions of this Court: *Colleton Realty Co. v. Folk,* 85 S. C., 84, 67 S. E., 156; *Holliday v. Pegram,* 89 S. C., 73, 71 S. E., 367, Ann. Cas., 1913-A, 33.

As to the question of ambiguity, urged by appellant, we deem it sufficient to state, in our opinion, that question does not arise in this case and there was, therefore, no issue of that nature to be submitted to the jury.

While we have not discussed every question and position urged by the appellant on the appeal, we have considered the same and, after due consideration of the entire record, are forced to the conclusion that the ruling of the trial Judge must be sustained.

It is therefore the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.

MR. JUSTICE BONHAM (concurring) : I concur in this case only upon the authority of the case of *Holly Hill Lumber Co. v. Federal Land Bank,* 160 S. C., 431, 158 S. E., 830.