20816

Roger Mae W. BUGG, Appellant, v. Bernard BUGG, Respondent.
(249 S. E. (2d) 505)

*Joseph T. McElveen, Jr.,* of *Bryan, Bahnmuller, King, Goldman & McElveen,* Sumter, *for appellant.*

*John O. McDougall* of *Weinberg, Warner, Brown & Mc-Dougall,* Sumter, *for respondent.*

November 21, 1978.

RHODES, Justice:

This appeal is from a family court order which adopted an unsigned, out-of-court, purported agreement between the parties as determinative of their respective property rights in an action for separate support and maintenance. We reverse.

This action was commenced by appellant (wife) on July 12, 1977 for separate maintenance and support, a property division, and attorney's fees from respondent (husband). The parties have been married for 35 years and all children of the marriage are emancipated. A final hearing in the matter was scheduled before the Family Court Judge on November 2, 1977. Just prior to this hearing the parties, through their respective counsel, entered into negotiations by telephone in an attempt to arrive at a settlement of the issues in dispute. An oral agreement acceptable to both parties and their respective counsel was reached over the telephone on the night of November 1st, and the hearing scheduled for the following day was cancelled. This settlement was confirmed by the wife's counsel in a letter to the husband's counsel dated November 2nd, which stated in part:

This will confirm our settlement of the above case. You are to prepare an agreement and submit it to me at the earliest possible time so that we can conclude this matter. The

following is the full agreement: [here follows a detailed statement of the settlement being confirmed]

. The husband's attorney responded immediately by forwarding a "proposed Order and Separation and Property Settlement Agreement" along with a cover letter which contained the following directions:

. . . I would appreciate your having your client review same and if she concurs, have her sign it, returned to me, I will obtain Mr. Bugg's signature on same, submit it to the court and forward you a certified copy of same.

The proposed agreement and cover letter were forwarded to the wife by her attorney on November 4th, and she replied to her attorney on November 6th that she was unable to discuss the matter with him due to illness. On November 17th, appellant advised her counsel that after consideration she had decided not to sign the proposed agreement, whereupon her attorney immediately so advised counsel for the respondent.

On November 22nd, respondent filed a Petition with the Family Court praying that the proposed agreement be made the order of the court and that the appellant be required to execute any documents necessary to give full effect to said agreement. A hearing was held on December 16th at which time the court inquired of both parties as to whether the proposed agreement correctly stated the settlement terms verbally agreed to by them. Both parties affirmatively replied, but appellant in her testimony stated:

. . . well when I read the proposal I realized that my verbal agreement had been a terrible mistake (sic) to the fact that I put so much into the family during the past years. In addition to working, I had taken care of the household, the yard and the house. I had contributed money towards the upkeep on the house, I paid the groceries, and bought clothes for the family, helped with the children's education.

The lower court entered a final order confirming the agreement and incorporating it as a part thereof.[1]

■ While we have been cited to cases from other jurisdictions in the special area of out-of-court agreements incident to marriage separations, we do not consider them relevant to the factual posture of the present case. The fact that the agreement before us is incident to a marriage separation does not suspend the application of general contract principles in determining whether a valid contract was in fact ever entered into by the parties. The application of these principles, in our judgment, properly disposes of this case.

■ Whether the parties to an oral or informal agreement became bound prior to the execution of a contemplated formal writing is a question depending largely upon their intention. This principle is sometimes expressed as whether they intend the formal writing to be a condition precedent to the taking effect of the agreement. Where it is determined that the parties intended not to be bound until the written contract is executed, no valid and enforceable obligation will be held to arise. *Holliday v. Pegram,* 89 S. C. 73, 71 S. E. 367 (1911); *S. H. Kress & Co. v. Fisher,* 65 F. (2d) 682 (4th Cir.) (1933); *Kayser & Co. v. Textron, Inc.,* 228 F. (2d) 783 (4th Cir. 1956); 17 Am. Jur. (2d) Contracts § 28.

The cases uniformly hold that whether the contracting parties intended to be bound by an informal agreement prior to the execution of a contemplated formal agreement is to be determined by the surounding facts and circumstances of each particular case. Thus, it is necessary that we examine the negotiations leading to the proposed written agreement in order to determine the intentions of the parties.

There can be no doubt that both parties intended that the negotiations for settlement would be consummated by the

---

[1] For the procedures appropriate to court settlements, *see* § 14-21-850, South Carolina Code of Laws (1976), and Circuit Court Rule No. 14, the latter made applicable by Family Court Rule No. 3.

execution of a written agreement in such form as would be suitable for submission to the court for approval. The initial letter from the wife's attorney to the husband's attorney directed that he prepare and submit to him an agreement. This letter further suggests that such agreement would be submitted to the court for approval by use of the following language: ". . . Assuming that the agreement will be made an Order of the Court, I would request that Mr. Bugg be restrained . . . ." That husband's counsel fully shared the intention that the settlement would be reduced to writing and submitted to the court is evidenced by the fact that he immediately prepared the proposed written agreement and forwarded it to his adversary stating in the cover letter that if, upon review, his client concurred, she should sign it, have it returned to him, whereupon he would have the husband sign it, and submit it to the court. The letter further states that Mr. Bugg would pay the $7,000 lump sum alimony provided in the proposed agreement "as soon as the agreement is entered into".

From the foregoing circumstances, we conclude that the execution of the written agreement by the parties was a condition precedent to its effectiveness. The husband's counsel clearly indicates in the above letters the absence of finality in agreement by use of the terms "if she concurs" and "as soon as the agreement is entered into". Mrs. Bugg, the wife, was examined by the court as to why she had verbally consented to the informal agreement. She stated "my understanding was that I would get a written proposal from Mr. McDougall [husband's counsel] and at this time I went ahead and approved it at that time." The above statement is indicative of the fact that Mrs. Bugg did not consider the informal agreement as binding until it had been reduced to writing and executed by the parties.

We conclude it was the intention of the parties that the signing of the written agreement was a condition precedent to its effectiveness. Since this condition

precedent has not been fulfilled in that neither party ever signed the proposed agreement, there is no agreement in existence between the parties, and the lower court was in error in holding the proposed agreement valid and incorporating it into its Order.

Reversed and remanded.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.