**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Burton Fire District, Respondent,

v.

City of Beaufort, Appellant.

And

Burton Fire District, Respondent,

v.

Town of Port Royal, Appellant.

Appellate Case No. 2017-000620

———————

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity

———————

Unpublished Opinion No. 2020-UP-005
Submitted November 1, 2019 – Filed January 8, 2020

———————

**AFFIRMED**

———————

Mary Bass Lohr, of Howell Gibson & Hughes, PA, of Beaufort, for Appellants.

H. Fred Kuhn, Jr., of Moss Kuhn & Fleming, PA, of Beaufort, for Respondent.

---

**PER CURIAM:**  This appeal arises from a dispute regarding a September 2, 2010 Settlement Agreement between the Burton Fire District (Burton) and Appellants City of Beaufort (Beaufort) and the Town of Port Royal (Port Royal).  The Settlement Agreement was executed after years of litigation between the parties regarding Appellants' annexation of properties within Burton's service area.

In the Settlement Agreement, Burton acknowledged Appellants' right to annex properties in its service area, and Appellants acknowledged Burton's right to be compensated for the loss of the tax base of the properties and for continuing to provide services to the area.  Under the heading "Payment for Service," the Settlement Agreement set forth formulas for calculating the annual payments Appellants were to pay to Burton under the Agreement on or before March 1 of each applicable year.  The formula for Port Royal was "Burton Total Millage X Assessed Value of Port Royal Annexed Properties X 25%."  The formula for Beaufort was identical, except that the final multiplier was nineteen, instead of twenty-five, percent.  A footnote attached to the phrase "assessed value" in the formula provided it was defined "as the assessed value of each subject property for the applicable service year.  For example, the March 1, 2011 payment for services in, and cumulative annexations through, calendar year 2009 will use the assessed value established for the October 16, 2010 Beaufort County property tax bills."  Attached to the Settlement Agreement were lists of the subject properties and beside the identifying PIN number for each property were three columns, labeled "appraised," "assessed," and "taxable va."

Sometime in 2011 or 2012, Burton suspected a shortage in Appellants' annual payments, which Burton attributed (correctly, it turns out) to Appellants' use of the "taxable values," rather than "assessed values," in the formulas for calculating their payments.  For many of the properties, the assessed value and taxable value are the same, but when a property is owned by the federal government or otherwise tax-exempt, the taxable value may be as low as zero, resulting in the discrepancy in the payments.  Ultimately, Burton brought this suit, alleging Appellants breached the Settlement Agreement by failing to make the required payments.

At trial, the parties presented conflicting testimony regarding the meaning of "assessed value."  The Beaufort County Assessor testified "assessed value" had a specific and well-known meaning for property tax purposes in Beaufort County and that meaning was distinct from "taxable value."  Several Burton employees testified

about the protracted negotiations leading up to the execution of the Settlement Agreement, the intentional nature of the use of "assessed value," and their understanding that Appellants were to compensate Burton not only for lost tax revenues but also for continuing to provide fire services to the annexed properties. Port Royal's former attorney, who drafted the Settlement Agreement, testified her understanding was the parties were to utilize the numbers from the "taxable va" column to calculate their annual payments to Burton. She testified she was unaware there was a difference in meaning between "assessed value" and "taxable value." Appellants presented testimony from several other employees who asserted that throughout the negotiations, the parties understood Appellants were to pay Burton based on the "taxable values" of the properties because otherwise they would be paying Burton for properties from which they were unable to collect property taxes.

The master awarded judgment in favor of Burton in the amount of $178,618.20, concluding the Settlement Agreement unambiguously provided the annual payments were to be calculated using the "assessed value" of the annexed properties. Beaufort and Port Royal now appeal, arguing the master erred by (1) failing to properly consider the language in the parties' Settlement Agreement defining "assessed value" by reference to the "assessed values" set forth in the October 16, 2010 tax bills; (2) failing to consider and address Appellants' affirmative defenses of estoppel, waiver, laches, ultra vires, and reformation; and (3) finding the positions taken by the parties during their summary judgment motions bore any relevance to this matter.

"Our scope of review for a case heard by a Master-in-Equity who enters a final judgment is the same as that for review of a case heard by a circuit court without a jury." *Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989). "An action for breach of contract is an action at law." *Electro-Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter*, 357 S.C. 363, 367, 593 S.E.2d 170, 172 (Ct. App. 2004). "In an action at law, on appeal of a case tried without a jury, the appellate court's standard of review extends only to the correction of errors of law." *Id.* "The trial judge's findings of fact will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Id.*; *see also Query v. Burgess*, 371 S.C. 407, 410, 639 S.E.2d 455, 456 (Ct. App. 2006) ("In an action at law, 'we will affirm the master's factual findings if there is any evidence in the record which reasonably supports them.'" (quoting *Lowcountry Open Land Tr. v. State*, 347 S.C. 96, 101–02, 552 S.E.2d 778, 781 (Ct. App. 2001))).

We find evidence supports the master's interpretation of "assessed value." Appellants argue the master should have considered the meaning of "assessed value" as set forth in the tax bills referenced by footnote three of the Settlement Agreement. We disagree because the Settlement Agreement was unambiguous on its face and,

therefore, extrinsic evidence of the parties' intent was irrelevant. *See Reeves v. S.C. Mun. Ins. & Risk Fin. Fund*, 427 S.C. 613, 622, 832 S.E.2d 312, 317 (Ct. App. 2019) (stating whether a contract is ambiguous is a question of law we review de novo); *Beaufort Cty. Sch. Dist. v. United Nat. Ins. Co.*, 392 S.C. 506, 516, 709 S.E.2d 85, 90 (Ct. App. 2011) ("If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect."); *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 497, 649 S.E.2d 494, 501 (Ct. App. 2007) ("The parties' intention must, in the first instance, be derived from the language of the contract."). The Settlement Agreement clearly stated that in consideration for providing fire and emergency response services to all Port Royal and Beaufort annexed properties throughout the term of the agreement, Appellants shall pay to Burton annual payments equivalent to the Burton millage, multiplied by the "[a]ssessed [v]alue" of the properties, multiplied by twenty-five percent (for Port Royal) or nineteen percent (for Beaufort). The reference to tax bills in footnote three of the Settlement Agreement appears to have been included only to clarify the timing of the payments, as property tax bills are paid in arrears and annexed properties are not transferred to the municipalities until the year following the annexation. No tax bills were attached to the Settlement Agreement, whereas the lists of properties containing distinct values for "assessed" and "taxable" were attached. Moreover, the explicit purpose of the Settlement Agreement was to compensate Burton "both for the loss of properties to annexation and for providing services to Beaufort and Port Royal as set forth herein"; as the master found, this purpose is consistent with Burton's interpretation, as the use of the pre-exemption "assessed values" would result in Burton being reimbursed beyond just a percentage of the tax revenues Appellants would actually be able to collect on the post-exemption values of the properties.

Next, Appellants argue the master's failure to fully address their defenses in either his order granting judgment or order on Appellant's motion for reconsideration was in contravention of Rule 52, SCRCP. In his order on Appellants' motion for reconsideration, the master stated, "The court rejects the Defenses of waiver, estoppel and laches under the facts presented. Further, the Court rejects the 'Ultra Vires' defense." Rule 52(a) provides, "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . ." While we believe Rule 52(a) requires a court to specifically separate its conclusions of law, we believe the master's failure to more fully flesh out the reasons for its rejection of Appellants' defenses is not reversible error. *See Borg Warner Acceptance Corp. v. Darby*, 296 S.C. 275, 279, 372 S.E.2d 99, 101–02 (Ct. App. 1988) (holding Rule 52(a)'s requirement that a court in an action tried without a jury "find the facts specially and state separately

its conclusions of law thereon" was "merely directory and provide[d] no basis for invalidating a judgment"); *see also In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 133, 568 S.E.2d 338, 343 (2002) ("We do not require a lower court to set out findings on all the myriad factual questions arising in a particular case. But the findings must be sufficient to allow this Court, sitting in its appellate capacity, to ensure the law is faithfully executed below." (citation omitted)). Appellants' arguments at trial centered only on issue one, above, so the bulk of the master's order was devoted to addressing that issue. We therefore affirm the master as to this issue.

The master initially found the parties stipulated the Settlement Agreement was unambiguous, citing the parties' cross-motions for summary judgment arguing the agreement was unambiguous. In their motion for reconsideration, Appellants argued this finding was in error because there was no such stipulation. In his order on Appellants' motion for reconsideration, the master amended the order, recognizing the parties did not technically stipulate to the unambiguity of the agreement, but finding the parties' positions at summary judgment were "relevant." Appellants now argue this finding was error. We find this issue was abandoned on appeal, as Appellants failed to cite to any legal authority in their final brief to support it. *See* Rule 208(b)(1)(E), SCACR (providing appellate briefs shall include, "[a]t the head of each part, the particular issue to be addressed . . . set forth in distinctive type, followed by discussion and *citations of authority*" (emphasis added)); *see also Bass v. Gopal, Inc.*, 384 S.C. 238, 250 n.7, 680 S.E.2d 917, 923 n.7 (Ct. App. 2009) (concluding the appellant abandoned issue on appeal where he failed to cite any authority in his brief to support his argument).

**AFFIRMED.**[1]

**LOCKEMY, C.J., and KONDUROS and HILL, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.