# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Nicole Lampo, Respondent,

v.

Amedisys Holding, LLC, and Leisa Victoria Neasbitt, Appellants.

Appellate Case No. 2019-000451

———————

Appeal From Georgetown County
Benjamin H. Culbertson, Circuit Court Judge

———————

Opinion No. 5934
Heard February 9, 2022 – Filed August 10, 2022

———————

## REVERSED AND REMANDED

———————

George A. Reeves, III, of Columbia, and Jason D. Keck, of Chicago IL, both of Fisher & Phillips, LLP, for Appellants.

James Paul Porter, of Cromer Babb Porter & Hicks, LLC of Columbia, for Respondent.

———————

**HILL, J.:** This appeal of an order denying a motion to compel arbitration turns on whether Nicole Lampo agreed to arbitrate disputes arising out of her employment with Amedisys Holding, LLC (Amedisys). The key question is whether, under the specific circumstances of this case, Lampo accepted the arbitration agreement by acknowledging receipt of the agreement and continuing to work at Amedisys. We conclude she did because she had actual notice of Amedisys' offer to modify her

employment agreement to include the arbitration provision. Accordingly, we reverse the denial of Amedisys' motion to compel arbitration.

## I.     FACTS

Lampo worked as a physical therapist at Amedisys from July 2013 until March 2018, when she was fired. In December 2018, Lampo sued Amedisys and Appellant Leisa V. Neasbitt, her former supervisor, alleging wrongful discharge, interference with prospective contractual relations, and defamation. In response, Amedisys moved to compel arbitration, asserting Lampo's claims against both Amedisys and Neasbitt were subject to an arbitration agreement Lampo had accepted a month after she began her employment.

In support of the motion, Amedisys included affidavits and exhibits demonstrating that on August 26, 2013, it sent an email to its employees with the subject line, "Important Policy Change – Must Read." The message contained a hyperlink, stating, "This e-mail contains important time-sensitive materials that the Company requires that you read as they could affect your legal rights. Please click here to receive them." Upon clicking the link, the following pop-up message filled the employee's screen:

THE AMEDISYS ARBITRATION PROGRAM

**ACKNOWLEDGEMENT FORM**

By clicking "Acknowledge" below, you will be given access to the Amedisys Arbitration Program materials, which include a Cover Letter, the Dispute Resolution Agreement, and FAQs. You are required to review these materials. Please read the materials carefully. **Unless you opt out of the Dispute Resolution Agreement within 30 days of today's date, you will be bound by it, which will affect your legal rights.**

By clicking the "Acknowledge" button below on this screen, I acknowledge and understand that I will be given access to the materials described in the above paragraph and that I am required to review these materials.

(Emphasis in original). Upon clicking "Acknowledge," employees were automatically directed to a webpage providing descriptions and links entitled: "Arbitration Agreement," "Cover Letter," and "Frequently Asked Questions."

The arbitration agreement stated it was governed by the Federal Arbitration Act, 9 U.S.C. § 1 et. seq. (2018) (FAA) and applied "to any dispute arising out of or related to Employee's employment with Amedisys or termination of employment regardless of its date of accrual and survives after the employment relationship terminates." The arbitration agreement also limited the parties' discovery to "the right to take the deposition of one individual and any expert witness designated by another party."

The agreement stated acceptance of the agreement was not a mandatory condition of employment and employees could opt out of the agreement by printing an attached opt-out form and mailing it to an address in Louisiana. The form was required to be postmarked within thirty days of "Employee's acknowledgment of receipt of this [arbitration agreement]" and "[s]hould Employee fail to opt out of this [arbitration agreement] within the 30-day period in the manner provided above, Employee's continuation of his or her employment with [Amedisys] shall constitute Employee's and [Amedisys'] mutual acceptance of the terms of this [arbitration agreement]."

Amedisys attached electronic records to its motion to compel arbitration that indicated Lampo had used her unique username and login to both open the email and click the "Acknowledge" button on the pop-up acknowledgment form on August 6, 2013, at 1:55 pm. However, Amedisys did not provide any evidence demonstrating Lampo scrolled or read through the Arbitration Agreement, Cover Letter, or Frequently Asked Questions links and documents. In her pleadings, Lampo alleged she had no actual notice of the alleged arbitration agreement because she did not recall receiving the August 26, 2013 email or reading the linked documents.

After a hearing, the circuit court denied Amedisys' motion to compel arbitration, ruling "there is no competent record evidence of acceptance, mutual assent, or a meeting of the minds to warrant declaring the arbitration agreement enforceable." The circuit court did not separately address the issue of notice.

On appeal, Amedisys argues Lampo accepted the arbitration agreement by continuing to work at Amedisys after declining to opt-out of the arbitration agreement within thirty days.

Lampo argues the circuit court correctly found she did not accept the agreement and presents three other sustaining grounds to affirm the denial of the motion to compel arbitration. First, Lampo asserts she received no actual notice of the terms of the

agreement, or alternatively, she is entitled to a jury trial on the notice issue. Second, Lampo claims the arbitration agreement's restrictions on discovery render the entire arbitration agreement unconscionable and, consequently, unenforceable. Third, Lampo asserts the scope of the arbitration agreement does not cover disposition of her post-termination claims or her claims against Neasbitt.

## II. DISCUSSION

### A. Actual Notice and Continued Employment as Acceptance

We review a trial court's ruling on a motion to compel arbitration de novo, but we will not reverse factual findings of the trial court that are reasonably supported by the record. *Partain v. Upstate Auto. Grp.*, 386 S.C. 488, 491, 689 S.E.2d 602, 603 (2010). The FAA requires that courts treat arbitration agreements the same as all other contracts—no more, no less. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) ("[T]he purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so."). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).

Because the core of the FAA is consent, arbitration may be compelled only when the parties have agreed to it. *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). Because arbitration under the FAA rests entirely upon consent, it is always up to the court to determine if the parties have an agreement to arbitrate. *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010). Whether the parties have formed an agreement to arbitrate is determined by applying South Carolina contract law. *Wilson v. Willis*, 426 S.C. 326, 336, 827 S.E.2d 167, 173 (2019).

The familiar requisites to a binding contract are a meeting of the minds of the parties as to all essential and material terms, supported by consideration. *See Electro Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter*, 357 S.C. 363, 368, 593 S.E.2d 170, 173 (Ct. App. 2004) ("The necessary elements of a contract are offer, acceptance, and valuable consideration."); *id*. at 369, 593 S.E.2d at 173 ("Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." (quoting Restatement (Second) of Contracts § 50 (1981))). A party cannot assent to something he does not know about, so the law in general requires that for an offer to be effective, the responding party must have reasonable notice of the offer's terms. *See* Restatement (Second) of Contracts § 53 cmt. c (1981) (stating that when the offeror invites performance as acceptance, "[t]he offeree's conduct ordinarily constitutes an acceptance in such cases only if he knows

of the offer"); *id* ("[The offeree's] rendering of the invited performance with knowledge of the offer is a sufficient manifestation of assent."). In South Carolina, our supreme court has equated reasonable notice of an offer to modify employment contracts with actual notice. *Fleming v. Borden, Inc.*, 316 S.C. 452, 463, 450 S.E.2d 589, 595–96 (1994). *Fleming* held actual notice was required when an employer attempted to modify an employment contract with a subsequent handbook. *Id*. Yet, just as in *Towles v. United HealthCare Corp.*, we do not need to address whether *Fleming*'s actual notice rule extends beyond the handbook context to all employment contract modification scenarios because, as explained below, we conclude Lampo received actual notice. 338 S.C. 29, 37–38, 524 S.E.2d 839, 844 (Ct. App. 1999).

Usually, the question of whether an employee has received actual notice is for the jury; however, an employer may conclusively prove an employee has actual notice of the terms of the employment agreement if the employee signed an acknowledgment form stating she received the agreement and promised to review it. *Id.* at 39–40, 524 S.E.2d at 845. This is true even if the employee has electronically signed the acknowledgment form. *See* S.C. Code Ann. § 26-6-70 (2007) (providing an electronic signature has the same force and effect as a signature in writing).

We find Amedisys' email—combined with the links to the arbitration agreement, FAQs, and cover letter—was effective to communicate the offer of the arbitration agreement to Lampo. Only one rational inference may be drawn from the undisputed fact that Lampo clicked "Acknowledge" on the pop-up acknowledgement form while logged into her unique employee username: Lampo had actual notice of the offer. *See Towles*, 338 S.C. at 39, 524 S.E.2d at 845 (finding "[a]fter receiving and signing the Acknowledgment, [the employee] cannot legitimately claim [the employer] failed to provide actual notice of the arbitration provisions because the law does not impose a duty to explain a document's contents to an individual when the individual can learn the contents from simply reading the document"). After all, the email subject heading alerted Lampo that she "must read" the content and the form twice notified her she was required to read the entire agreement. The language of the offer also makes clear that acceptance would not be accomplished by the employee's signature (electronic or otherwise) but instead by the employee's continued performance of job duties after declining to opt-out of the agreement. Finally, there is no dispute that Lampo declined to opt out of the agreement and continued working at Amedisys. Accordingly, we find her conduct demonstrates as a matter of law that she had actual notice of the arbitration agreement and accepted it. *Id.* at 40, 524 S.E.2d at 845 (holding employee accepted arbitration offer by continued employment). We therefore reverse the circuit court's denial of Amedisys' motion to compel arbitration.

Courts judge online transactions by the same law that has long governed contracts memorialized by ink and paper. Today, terms such as "click wrap" and "browse wrap" seem less exotic to our so-called modern ears than "foolscap," the standard term for legal paper a century ago. For many good reasons, the law in most instances lags behind technology, and the challenge for courts is how to apply old law to new circumstances. *See, e.g.*, *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (applying general principles of state contract formation and the rule that a person has notice of the terms of the paper he or she is signing to online contracting). The "old" law controlling here includes *Towles*, and we have no difficulty transplanting the principles of that well-reasoned decision to the new circumstances of this case, even if the legally binding agreement was formed in cyberspace rather than face to face across a conference table. *See generally Sarchi v. Uber Techs., Inc.*, 268 A.3d 258, 270–74 (Me.2022) (collecting and synthesizing cases concerning electronic assent to online arbitration agreements in consumer transactions). As fewer contracts are presented on paper and in person, the risk rises that the frontiers of online transactions may cross borders established by traditional contract principles. *See, e.g., Berkson v. Gogo LLC*, 97 F. Supp.3d 359, 385–86 (E.D.N.Y. 2015) (cataloging ten unique differences between online "wrap" contracts and traditional contract practice and doctrine). Still, "[c]ourts are not licensed to ignore the old chestnuts—cases that remind us that (1) certain formalities are required for a contract to be formed . . . and (2) when the formalities are met, a contract it does make . . . ." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 260 (4th Cir. 2021) ("The electronic age has not made the formalities of contract less crucial, but more so . . . .").

We caution that the arbitration agreement designed by Amedisys may well be at the outer limits of what constitutes a valid offer to modify the terms an employment agreement to add an arbitration agreement. To be sure, Amedisys did not mandate arbitration as a condition of employment. However, Amedisys is a sophisticated, multi-state corporation employing over sixteen thousand people, whose offer to arbitrate all employee-related claims was designed with specific choice architecture: it was sent by email (rather than presented in person, on paper), with barriers to opting out of the modification (having to print a form and send it in the mail to an out-of-state address), and no barriers to accepting the modification (just keep showing up to the job the employee has already agreed to do). The acknowledgement form did not require Lampo to confirm she read the arbitration agreement but only to promise she would read it. We understand why the circuit court was hesitant to find Lampo agreed to this modification of her employment

contract. Nevertheless, we must conclude Lampo received actual notice of the arbitration agreement and accepted it by her continued employment.

We also find Lampo agreed to arbitrate her claim against Neasbitt. While the agreement did not name Neasbitt, it did state that, as used in the agreement, the term "Amedisys" included reference to and was synonymous with its employees and agents. Because Neasbitt is an employee and agent of Amedisys, the arbitration agreement is directly enforceable by Neasbitt against Lampo. *Cf.Wilson*, 426 S.C. at 338, 827 S.E.2d at 174 ("South Carolina has recognized several theories that could bind nonsignatories to arbitration agreements under general principles of contract and agency law, including (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter ego, and (5) estoppel."). In light of this disposition, we need not analyze whether Neasbitt may enforce it derivatively.

*B. Unconscionable Terms*

Having found the parties formed an agreement to arbitrate, we move to the next issue: whether the agreement is valid. Parties may delegate the issue of whether their arbitration agreement is valid to the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). They did not do so here, so we must decide it.

To prove the arbitration agreement is unconscionable, Lampo must show (1) she lacked a meaningful choice as to whether to arbitrate because the agreement's provisions were one-sided and (2) the terms were so oppressive no reasonable person would make them and no fair and honest person would accept them. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24–25, 644 S.E.2d 663, 668 (2007).

Although the arbitration agreement allows each party to take the deposition of only one witness and any expert witness designated by another party, the parties are equally limited by this term and both parties retain the right to additional discovery by mutual agreement or by order of the arbitrator upon request. *See Lucey v. Meyer*, 401 S.C. 122, 143, 736 S.E.2d 274, 285 (Ct. App. 2012) ("While the arbitration clause here does limit discovery by allowing the parties to be the only witnesses called in person, this cannot, standing alone, be a reason to invalidate an arbitration agreement."); *see also Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 983–85 (2010) (rejecting claim that arbitration provision limiting discovery to one deposition per party and the deposition of experts was unconscionable, especially where arbitrator could order additional discovery).

One of arbitration's main benefits is that it allows parties to agree to an alternative, informal forum to resolve their disputes by streamlined process. Limiting formal

discovery is essential to the mission of arbitration, provided the limits do not deprive parties of a "fair opportunity to present their claims." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). Lampo lodges a general argument that most of her potential witnesses remain employed by Amedisys and limiting her to deposing only one fact witness cripples her ability to fully develop her case. Lampo has not provided any concrete evidence specific to her case showing the limitation is actually unfair; though, as her case progresses, the arbitration agreement allows her the opportunity to persuade the arbitrator to enlarge her discovery rights. We therefore find the arbitration agreement is not unconscionable.

## *C. Scope of the Arbitration Agreement*

Lampo's final contention is that the scope of the arbitration agreement does not cover any causes of action that arose after she was fired. Because the arbitration agreement delegates issues concerning its "interpretation or application" to the arbitrator, the question of whether the arbitration agreement encompasses Lampo's post-termination claims must be decided by the arbitrator, not the court.

We therefore reverse the circuit court's denial of Amedisys' motion to compel arbitration.

**REVERSED AND REMANDED.**

**GEATHERS, J., and LOCKEMY, A.J., concur.**