366 So.2d 1218 (1979)
FIDELITY NATIONAL BANK OF SOUTH MIAMI, Appellant,
v.
Peter MELO and Angelica Melo, Appellees.
No. 78-767.
District Court of Appeal of Florida, Third District.
January 30, 1979.
Rehearing Denied February 23, 1979.
*1219 Valdes-Fauli & Valdes-Fauli and Clemente L. Vazquez-Bello, Miami, for appellant.
Keith, Mack, Lewis & Allison, Miami, for appellees.
Before BARKDULL, KEHOE and SCHWARTZ, JJ.
KEHOE, Judge.
Appellant, plaintiff in the non-jury trial below, brings this appeal from a final judgment entered in favor of appellees, defendants below, in suit on a loan guaranty. We reverse.
The facts relevant to this appeal may be summarized as follows: In October of 1974, appellee Peter Melo became a one-third stockholder and corporate secretary of Marsal Fish Market, Inc. [hereinafter referred to as the Corporation]. Appellee Angelica Melo was the wife of Peter. During November of 1974, the Corporation negotiated a $5000 loan from appellant, the Fidelity National Bank of South Miami [hereinafter referred to as the Bank], which was evidenced by a promissory note. During the negotiations for the loan, appellee Peter Melo represented himself as an officer of the Corporation. As a prerequisite for the loan, appellees executed an unlimited and continuing written guaranty, dated November 18, 1974, on behalf of the Corporation in favor of the Bank. By the terms of this agreement, appellees assumed both liability for all the existing indebtedness and all future extensions of credit or loans of the Bank to the Corporation. The Corporation satisfied in full the November, 1974 promissory note; however, on May 23, 1975, the Corporation negotiated a new loan from the Bank, also in the amount of $5000, as evidenced by a promissory note. Thereafter, on August 1, 1975, appellee Peter Melo entered into an agreement with the other stockholders of the Corporation whereby he resigned from and surrendered all his interest in the Corporation. Appellee Peter Melo gave no notice to the Bank of his separation from the Corporation. The Bank learned of his separation after it had filed this lawsuit. Further, appellee Peter Melo never attempted to terminate the written guaranty in favor of the Bank. Subsequently, the promissory note of May 23, 1975, was renewed in full by the Bank and evidenced by a renewal note dated August 21, 1975. In turn, the note of August 21, 1975, which bore interest at the rate of 11% per annum, was renewed in full through a promissory note dated October 20, 1975, which had an interest rate of 13% per annum. This latter promissory note, on which no principal or interest payments have ever been made, is the debt sought to be recovered by the Bank from the appellees through the guaranty agreement. The parties stipulated that subsequent to the payment of the November, 1974 note, there *1220 was no notice or communication between them. Further, it was stipulated that the Corporation, on May 25, 1975, without notice or consent from appellees, borrowed the $5000, evidenced by the note of the same date which was subsequently renewed twice. From the trial court's entry of a final judgment in favor of appellees, appellant appeals.
Appellant raises the following two points on appeal: first, that a creditor, who is the holder of an absolute, unlimited, and continuing written guaranty securing the payment of loans and extensions of credit to a principal-debtor, is not obligated to give notice to the guarantor thereon of new loans and extensions of credit made to the principal-debtor, particularly where the guaranty by its terms contains language waiving such notice; and second, that a creditor, who is the holder of such a contract of guaranty, is not required to give notice to the guarantor thereon of any increases or variations in the rate of interest charged the principal-debtor, particularly where the guaranty by its terms contains language waiving such notice.
The pertinent portions of the written guaranty in this case are as follows:
"For value received and to enable MARSAL FISH MARKET, INC., a corporation of Miami, Florida, hereby designated as the `Debtor,' to obtain credit from time to time from the Fidelity National Bank of South Miami, Miami, Florida, the undersigned request(s) said Bank to extend from time to time to said debtor or to said debtor and others, such credit as said Bank may deem proper and in consideration of any other credit given, the undersigned hereby guarantee(s) the full and prompt payment to said Bank at maturity and at all times thereafter of any and all indebtedness, liabilities and obligations of every nature and kind of said debtor to said Bank and every balance and part thereof, and all renewals, extension and modifications thereof, whether now owing or due which may hereafter from time to time be owing or due and howsoever heretofore or hereafter created or arising or evidenced or acquired, to any aggregate amount not exceeding: Unlimited Dollars. .. .
"The liability hereunder shall in no way be affected or impaired by (and said Bank is hereby expressly authorized to make from time to time, without notice to anyone) any sale, pledge, surrender, compromise, release, extension, indulgence, alteration, exchange, change in or modification of any of said indebtedness, liabilities and obligations, either expressed or implied, or any contract or contracts evidencing any thereof, or any security or collateral therefore ...
"The granting of credit from time to time by the Bank to the said Debtor in excess of the amount of this Guaranty and without notice to the undersigned is hereby also authorized and shall in no way affect or impair this Guaranty . .
"Guarantors hereby agree that their obligations hereunder shall be absolute and primary and shall be complete and binding upon each guarantor upon this Guaranty being executed by him and subject to no oral statements or conditions, precedent or otherwise . ..
"This Guaranty shall be a continuing, absolute and unconditional Guaranty and shall remain in full force and effect until written notice of its discontinuance shall actually be received by said Bank, and also until any and all of said indebtedness, liabilities and obligations created before receiving such notice of discontinuance shall be fully paid.
"The undersigned guarantors agree that it is contemplated that from time to time, the Bank may extend future increases of credit to the Debtor or new loans to the Debtor after the original obligation guaranteed hereunder has been paid and Guarantors agree that this Guaranty shall remain in full force as to such future increases or new obligations until and unless a termination of this Guaranty is furnished in writing to the Bank."
*1221 In entering the final judgment in favor of appellees, implicit within that judgment was the finding that the trial court did not interpret the guaranty agreement as a continuing guarantee, but instead considered the guaranty agreement as pertaining to the original transaction and defined it as requiring notice to appellees for any other transactions. We must respectfully disagree with these conclusions based upon the record in this cause.
The law of Florida has recognized that a contract of guaranty may be continuing in nature. It is said to be continuing in nature if it contemplates a future course of dealing during an indefinite period, or if it is intended to cover a series of transactions or succession of credits, or if its purpose is to give to the principal-debtor a standing credit to be used by it from time to time. Thus, a continuing guaranty covers all transactions, including those arising in the future, which are within the description of contemplation of the agreement. Fewox v. Tallahassee Bank and Trust Co., 249 So.2d 55 (Fla. 1st DCA 1971). In our opinion, the written contract of guaranty signed by appellees in favor of appellant in this case constituted a continuing guaranty because by its terms it clearly contemplated a future course of dealing during an indefinite period, and was intended to cover a series or succession of credits and loans to the Corporation for the purpose of giving it, the principal-debtor beneficiary of the guaranty, a standing credit with appellant to be used from time to time.
The general rule is that a guarantee, such as we have here, when dealing with a continuing contract of guaranty, does not have a legal duty to give notice to the guarantors thereon of each transaction between the principal-debtor and the guarantee, provided that the particular transactions fall within the description of the course of dealings contemplated by the terms and conditions of the continuing guaranty. Ferst v. Blackwell, 39 Fla. 621, 22 So. 892 (1897); Bryant v. Food Machinery and Chemical Corporation, Niagra Chemical Division, 130 So.2d 132 (Fla. 3d DCA 1961). We note that in the instant case, even if notice were required, the guaranty agreement by its terms waived the requirement.
We believe that the guaranty agreement herein comports with the definition of a "continuing guaranty" set forth above and that no notice was required to be given to appellees of the eventual transactions pursuant to the agreement which led to this action. Further, we believe that the lack of a notice requirement also extended, under the facts herein, to the increase in the interest rates. We also note that, Section 687.11(1), Florida Statutes, imposes a 10% ceiling on the extent of appellees' liability for interest on the transactions herein.
Accordingly, based upon the authorities set forth herein, other applicable principles of law, and for the reasons given above, we hold that appellant's contentions on appeal are meritorious and require reversal of the final judgment appealed. Therefore, we reverse and remand the cause for any further proceedings.
Reversed and remanded.