MORRIS, Judge.
Sheldon Razin is one of two managing members of A Milestone, LLC. Razin, in his individual capacity, initiated a collection action to recover monies he lent Milestone. Based on what he perceived to be his right under the parties’ operating agreement, he retained his choice of coun *394 sel, Todd K. Norman, to represent Milestone in the collection action. However, the other managing member, Ashwini K. Bahl, retained separate counsel, Michael J. McDermott, to represent Milestone. Both Norman and McDermott filed motions to disqualify the other from representing Milestone. The trial court ultimately determined that neither attorney could properly represent Milestone and, therefore, that both Norman and McDermott were disqualified. The trial court then appointed a custodian to retain counsel to represent Milestone in the collection action and to perform other limited functions. One of those functions was to act as a tie-breaker should Razin and Bahl fail to agree on any management decisions. Razin now appeals the nonfinal orders disqualifying Norman and appointing a custodian. McDermott intervened in this action and filed a cross-appeal[1] from the same orders. For the reasons explained herein, we must affirm in part and reverse in part the orders of disqualification and appointment.
I. BACKGROUND
Razin and Bahl created Milestone for the purpose of owning and operating a shopping plaza as an investment. Milestone’s acquisition of the shopping plaza was financed, in part, by a $1,000,000 unsecured loan which Razin provided. The promissory note between Razin and Milestone provided that the loan was to be repaid by April 14, 2005. The note also provided that Milestone would be considered in default if it failed to repay the loan and that “[u]pon the occurrence of any event of Default, and at the option of the Lender, and without notice to any party, the Lender may declare all of the indebtedness evidenced hereby to be immediately due and payable.”
There is no dispute that Milestone failed to repay the loan by the due date. In March 2010, Razin sent a notice of default and demand for payment to Milestone. Although Razin also sent a tolling agreement which would have extended the time for repayment until May 14, 2010, Bahl refused to sign the agreement. Razin and Bahl’s already acrimonious relationship[2] continued to deteriorate until Razin finally filed his complaint seeking repayment under the note.
Things began to get procedurally complicated just prior to the filing of the complaint. On March 16, 2010, Razin sent a notice of a meeting of the board of managers of Milestone to Bahl and McDermott. The meeting was to be held on March 19, 2010. However, Bahl, through McDer-mott, responded that he would be unable to attend and requested that a different date be chosen. Bahl also raised objections to Razin’s choosing whom to retain as counsel to represent Milestone in Razin’s own suit against Milestone, and Bahl called for a vote on the matter by disinterested managers. Despite Bahl’s request and objections, Razin went ahead with the meeting on March 19, 2010, and at the meeting, Razin voted to authorize the retention of Norman to represent Milestone in the collection action. Razin asserted his authority to retain Norman based on article VII, section 1 of the operating agreement. Article VII, section 1 provides in relevant part that “[njotwithstanding any other pro *395 vision of this Agreement, during the period that any portion of the Razin loan is outstanding, in the event of a disagreement between the Managers regarding any matter affecting the Company, the decision of Razin shall control with respect to such matter....”
Following the meeting, Bahl again raised objections to Razin’s actions in voting to retain Norman, arguing that Razin had a conflict of interest. Bahl also informed Razin that the notice for the meeting was insufficient and that Razin was in breach of the operating agreement.
Ignoring Bahl’s allegations, Razin proceeded to retain Norman to represent Milestone, and thereafter, Razin and Milestone (represented by Norman) entered into settlement negotiations to resolve the collection action. Eventually, Razin and Milestone drafted a settlement agreement which was contingent upon the trial court’s approval.
Meanwhile, Bahl retained McDermott to represent Milestone. McDermott filed an answer and affirmative defenses on Milestone’s behalf. Milestone (through McDermott) also asserted a counterclaim premised on an alleged prior breach of the operating agreement by Razin.
Razin and Milestone then filed a joint motion to strike the filings by McDermott and to disqualify McDermott from representing Milestone. In turn, McDermott filed a motion on Milestone’s behalf to strike any and all documents filed by Norman and to disqualify Norman from representing Milestone. After a hearing, the trial court ruled that: (1) Razin did not provide reasonable notice of the March 2010 meeting of the board of managers, (2) the meeting did not meet quorum requirements, (3) neither Norman nor McDermott could properly represent Milestone because a majority of the managers (i.e., Razin and Bahl) was required to authorize the retention of counsel, and (4) a custodian was necessary to retain counsel for Milestone and to exercise other limited powers, including breaking a tie vote between Razin and Bahl. The trial court gave Razin and Bahl the opportunity to come to an agreement as to whom should be appointed as a custodian. However, Razin and Bahl could not come to an agreement, and as a result, the trial court appointed a person of the court’s own choosing to act as a custodian.
II. ANALYSIS
A. Jurisdiction
We first write to address a jurisdictional issue raised by McDermott. McDermott has filed a motion to dismiss Razin’s appeal, arguing that because the trial court’s orders did not grant a right to immediate possession of property or appoint a receiver, the orders were not ap-pealable pursuant to Florida Rule of Appellate Procedure 9.180(a)(3)(C)(ii) or (D). McDermott contends that the more appropriate review would be by certiorari.
We acknowledge that certiorari is typically the most appropriate method to obtain review of a disqualification order “because denying a party counsel of his or her choice is a material injury without appellate remedy.” Event Firm, LLC v. Augustin, 985 So.2d 1174, 1175 (Fla. 3d DCA 2008); see also Pinebrook Towne House Ass’n v. C.E. O’Dell & Assocs., 725 So.2d 431, 433 (Fla. 2d DCA 1999).
However, we believe that due to the appointment of the custodian, the orders here fall within the parameter of rule 9.130(a)(3)(D), which allows review of a nonfinal order granting the appointment of a receiver. Although the trial court labeled the appointment as one of a custodian, the reality is that the appointed person could — and most likely will — exercise the *396 same type of authority and powers which are typically given to receivers. For instance, the custodian is not only given the authority to retain counsel, but he is also given the authority to cast a deciding vote on any management or operational decision when Razin and Bahl cannot agree on the particular matter. Given the acrimonious relationship between Razin and Bahl, the allegations that each has made against the other, and their history of being unable to agree on decisions affecting Milestone, it appears almost inevitable that the custodian would be casting tie-breaking votes on a regular basis, thereby effectively managing the business. Furthermore, the custodian’s appointment was not limited in time which is an additional reason that the appointment here was really more in the nature of a receiver. We therefore conclude that based on the unusual facts in this case, we have jurisdiction pursuant to rule 9.130(a)(3)(D) over the nonfinal orders disqualifying Norman and McDermott and appointing a custodian.
B. Razin had sole authority to retain counsel pursuant to article VII, section 1.
Article VII, section 1 of the operating agreement clearly indicates that as long as the Razin loan remains outstanding, Razin had controlling authority over any decision affecting Milestone in the event of a diságreement. And pursuant to article II, section 4(D) of the operating agreement, the decision on the retention of counsel to represent Milestone is within the authority of the board of managers. Because there is no dispute that Razin is a manager and that the loan is outstanding, we believe that the parties to the operating agreement—Razin and Bahl—remain bound by it.
Indeed, where there is “an unambiguous contractual provision ..., a trial court cannot give it any other meaning beyond that expressed and must construe the provision in accord with its ordinary meaning.” Emergency Assocs. of Tampa v. Sassano, 664 So.2d 1000, 1003 (Fla. 2d DCA 1995). This is because the contractual language reveals the intent of the parties, and therefore, the plain language controls. See id.
In its order of disqualification, the trial court noted that it was troubled by what appeared to be Razin’s conflict of interest in retaining counsel to represent Milestone in defense of Razin’s collection action. But even though this scenario does not appear to be an arm’s length transaction, the fact remains that Bahl agreed to the inclusion of article VII, section 1, in return for Razin’s $1,000,000 loan. Parties are free to waive any potential conflicts of interest, see Rudolf v. Gray, Harris & Robinson, P.A., 901 So.2d 148, 150 (Fla. 5th DCA 2005) (noting that shareholders of corporation had expressly waived any conflicts of interest from law firm representing corporation and individual shareholders), and we are powerless to rewrite the agreement in order to make it more reasonable for Bahl. See Emergency Assocs. of Tampa, 664 So.2d at 1003.
C. The operating agreement did not eliminate Razin’s duty of loyalty pursuant to section 608.4225(1) (a), Florida Statutes (2007), nor did Razin violate that duty of loyalty by retaining counsel to represent Milestone.
We reject any argument that any part of the operating agreement is void because it violates the statutes dealing with a manager’s duty of loyalty to a limited liability company. Section 608.423(2)(b) sets forth what provisions may be included in a limited liability company’s operating agreement, but it also specifies that an *397 operating agreement may not “[eliminate the duty of loyalty under s. 608.4225.” Although there are different aspects of the duty of loyalty, the relevant provision is described in section 608.4225(l)(a)(2) as: “Subject to s. 608.4226, [a manager’s] duty of loyalty is limited to: Refraining from dealing with the limited liability company in the conduct ... as or on behalf of a party having an interest adverse to the limited liability company.” A plain reading of article VII, section 1 of the operating agreement, however, reveals that it does not even mention the duty of loyalty nor does it expressly allow Razin to act adversely to Milestone’s interests. And section 608.4225(l)(d) provides that a manager does not violate a duty of loyalty under either chapter 608 or an operating agreement “merely because the manager’s ... conduct furthers such manager’s ... own interest.” Razin’s motivation to retain counsel to represent Milestone might have been to ultimately settle the case. If a settlement occurred, Razin would most likely receive payment for at least some of the monies he lent to Milestone and he would arguably be indirectly furthering his own interest. But as section 608.4225(l)(d) makes clear, such conduct would not violate a duty of loyalty.
Furthermore, although section 608.4226(1) describes conflicts of interest arising from a contract or transaction between a limited liability company and a manager,[3] we believe that Razin’s retention of Norman was fair and reasonable to Milestone. Thus, even if the retention constituted a conflict of interest, we believe it was permitted by section 608.4226(l)(c) which provides that a contract or transaction will not be deemed void or voidable if it was “fair and reasonable as to the limited liability company at the time it [wa]s authorized.” We reach this result because there is nothing in our record to suggest that Norman was representing Milestone in name only and instead actually working to protect Razin’s interests.[4] Although it is true that Razin’s *398 interests differed from Milestone’s in that Razin was seeking to collect the monies owed to him by Milestone, we cannot conclude that Razin’s retention of Norman violated Razin’s duty of loyalty because we do not believe that selecting and retaining counsel violates the precepts of sections 60S.4225(1)(a)(2) and 608.4226(1)(a)-(c).
D. The trial court erred by finding that quorum requirements were not met and that Razin’s notice of the board of managers meeting was insufficient.
As an alternative reason for disqualifying Norman, the trial court held that pursuant to article I, section 4 of the operating agreement, a quorum is required for meetings and that the holders of a majority of the voting power of Milestone constitute a quorum. Thus, because Razin and Bahl both held a 50% interest in Milestone and because only Razin was present at the March 2010 board of managers meeting, the trial court determined that the meeting violated the quorum provision. However, the trial court improperly relied upon article I as that provision deals with the rights and obligations of Milestone’s members rather than managers. McDer-mott concedes error on this point.
The trial court also determined that the notice of meeting which Razin sent on March 16, 2010, “did not give reasonable or sufficient notice of a meeting of the [b]oard of [m]anagers.” However, the trial court did not explain why the notice—which was sent three days prior to the actual meeting—was insufficient. In fact, the trial court commented that the “[n]otice provisions described in the [o]per-ating [a]greement apply only to the members.”
We cannot agree with the trial court that the three-day notice was insufficient. Our decision is based on the fact that only two days notice is required for members meetings pursuant to article I, section 7 of the operating agreement. Although there is no specific notice provision applicable to managers in the operating agreement, we see no reason why the same two-day time limit could not be utilized for managers meetings.
Consequently, we hold that the trial court erred in finding that the March 2010 board of managers meeting violated the quorum and notice provisions of the operating agreement.
E. McDermott is not entitled to relief on his cross-appeal because Bahl lacked authority to retain counsel to represent Milestone.
For the same reason we believe Razin had the authority to retain counsel to represent Milestone, we also believe Bahl lacked that same authority. As we have already explained, article VII, section 1 was included in the operating agreement as consideration for the Razin loan and it provides Razin with control rights while the loan is outstanding. There is no provision in the operating agreement which gives Bahl control rights under any circumstance.
McDermott argues that Bahl was the only person authorized to retain counsel because Razin breached other portions of the operating agreement thereby nullifying Razin’s right to vote on matters affecting Milestone. However, even if the allegation of Razin’s breach were true[5]—and we take no position on that issue as it was never decided by the trial court—the fact re *399 mains that article II, section 4 of the operating agreement directs that “[a]ctions of the [b]oard of [m]anagers shall be by majority vote.” There is no provision indicating that a manager loses his voting rights based on a breach of another portion of the operating agreement, and because Razin and Bahl both held a 50% interest, Bahl would be unable to obtain a majority vote by himself. Further, while article II, section 5(b) of the operating agreement provides Bahl with the authority to implement duties “on behalf of the [mjanagers ... which [can] be executed or performed without specific authority of any other officer,” that provision does not trump Razin’s control rights under article VII, section 1 while the Razin loan is outstanding.
There is simply nothing in the operating agreement which would give Bahl the sole authority to retain counsel to represent Milestone. We therefore affirm the trial court’s disqualification of McDermott.
III. ATTORNEYS’ FEES AND COSTS
Prior to filing their motions to intervene as individuals in this appeal, both Norman and McDermott purported to appear on behalf of Milestone.[6] In doing so, they both filed motions for appellate attorneys’ fees based on a prevailing party fee provision located in the promissory note executed by Razin and Milestone. However, neither Norman nor McDermott filed motions for attorneys’ fees in their individual capacities after we granted their motions to intervene. And, more important, the prevailing party fee provision in the note is inapplicable here because this appeal does not address any issues relating to the enforcement or non-enforcement of the note. We therefore deny Norman’s and McDermott’s motions for appellate attorneys’ fees.
Razin also seeks appellate attorneys’ fees and costs. However, Razin has cited the prevailing party fee provision located in article XI, section 6 of the operating agreement which provides:
Cost of Enforcement. In the event that the Company or any Member should seek enforcement of any provision of this Agreement, the prevailing party or parties shall be entitled to an award against the non-prevailing [sic] party or parties (in proportion to the parties’ liabilities) of the cost of enforcement, including, but not limited to attorney’s fees, arbitration fees, mediation fees, witness fees[,] and court costs.
Razin clearly is a member of Milestone, and this appeal was initiated to seek enforcement of article VII, section 1 of the operating agreement. Because we have concluded that Razin was entitled to retain Norman to represent Milestone pursuant to article VII, section 1, we grant Razin’s motion for appellate attorneys’ fees. We do, however, decline Razin’s request to impose attorneys’ fees .as a sanction against either Bahl or McDermott in their individual capacities.
Razin also seeks an award of costs. The request for costs is stricken without prejudice to Razin’s filing an appropriate request with the trial court. See Fla. R. App. P. 9.400(a).
IV. CONCLUSION
We hold that the trial court erred by disqualifying Norman and by appointing a custodian to retain counsel for Milestone and to conduct other limited functions. *400 Conversely, because there is no provision in the operating agreement giving Bahl sole authority to retain counsel for Milestone, we affirm on cross-appeal the disqualification of McDermott.
Affirmed in part, reversed in part, and remanded.
SILBERMAN, C.J., and CASANUEVA, J., Concur.

. McDermott actually filed' a petition for writ of certiorari, but because he was seeking relief from the same order that Razin is appealing from, this court elected to convert the certiorari proceeding to a cross-appeal.

. Our record suggests that Razin had previously made allegations against Bahl regarding certain undocumented transactions which Bahl made as Milestone’s management delegate.

. Although Razin contends that section 608.4226(1) should be construed as applying only where a manager of a limited liability company is an officer of or has a financial interest in another limited liability company, corporation, firm, association, or other entity, we do not agree with that interpretation. Section 608.4226(1) defines conflicts of interest in relevant part as
a contract or other transaction between a limited liability company and one or more of its ... managers, or managing members or any other limited liability company, corporation, firm, association, or entity in which one or more of its ... managers, or managing members are managers, managing members, directors, or officers or are financially interested....
(Emphasis added.) The use of the word or generally means that an alternative option is being presented, though it can be the equivalent of the word and where it is clear it is being used in the copulative and not the disjunctive sense. See Rudd v. State ex rel. Christian, 310 So.2d 295, 298 (Fla.1975) (citing Dotty v. State, 197 So.2d 315 (Fla. 4th DCA 1967)). This rule applies where to read the word or in the disjunctive sense would lead to an unintended result and would defeat the purpose of the statute. See id. (citing Payne v. Payne, 82 Fla. 219, 89 So. 538, 539 (1921)). But here, there is no indication that the legislature meant to define a conflict of interest as only occurring where a manager was an officer of or had a financial interest in another entity. That interpretation would lead to an absurd result. The more logical interpretation is that a manager can have a conflict of interest if he enters into a contract or transaction with the limited liability company — by himself — unless one of the savings provisions set forth in section 608.4226(l)(a)-(c) apply.

. In fact, because Norman was hired to represent Milestone, he had no duty to either Razin or Bahl individually; Norman's duty ran only to Milestone. See Rudolf, 901 So.2d at 150, 150 n. 4 (discussing comments to Florida Rule of Professional Conduct 4-1.13 which provide that when a lawyer represents an organization, the entity is the client, not the constituents of the organization).

. If Bahl believes that Razin has somehow violated his fiduciary duty to Milestone by breaching Razin’s obligations under the oper-aring agreement, then Bahl could elect to seek a remedy by filing a separate action for breach of fiduciary duty.

. We struck the answer briefs filed by Norman and McDermott on the basis that they were essentially challenging their own disqualification rather than representing Milestone. We provided them with the opportunity to intervene if they wished to challenge the disqualification issue further. Both Norman and McDermott did so.