IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

SCOTT CLEVELAND and
STEPHANIE CLEVELAND,

      Appellants,

v.

CROWN FINANCIAL, LLC,

      Appellee.

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-3036

_____/

Opinion filed January 15, 2016.

An appeal from the Circuit Court for Walton County.
William P. White, Jr., Judge.

Jeffrey U. Beaverstock and Daniel L. Burkard of Burr & Forman, LLP, Mobile, AL,
for Appellants.

Robert J. Powell and Matthew T. Davidson of Clark, Partington, Hart, Larry, Bond
& Stackhouse, Pensacola, for Appellee.

LEWIS, J.

      Appellants, Scott and Stephanie Cleveland, appeal a foreclosure judgment

entered in favor of Appellee, Crown Financial, LLC, raising three arguments, only

one of which warrants discussion. Appellants contend that the trial court erred in its

calculation of indebtedness because the parties' Profit Sharing Agreement expressly limited the financial advances made to Appellants by Appellee to $300,000. For the following reasons, we reverse the judgment and remand.

In March 2010, the parties, along with Marine Tank Terminal, Inc. ("MTT"), executed a Profit Sharing Agreement ("Agreement"). Appellant Scott Cleveland was labeled the Guarantor. In consideration of the mutual promises and covenants of the parties, Paragraph 1 of the Agreement provided in part:

> Subject to the terms and conditions contained in this Agreement, [Appellee] agrees to make the sum of $300,000.00 available to MTT on a revolving basis for a term of one (1) year beginning on the date of this Agreement, solely for the purpose of purchasing Crude Products. All sums to be advanced by [Appellee] under this Agreement shall be advanced at such times, in such amounts, to such parties, in such manner, and under such terms and conditions as [Appellee] (in its sole discretion) may approve. **The aggregate amount outstanding at any one time shall never exceed the sum of $300,000.00.**

(Emphasis added). As security for "MTT's obligations," MTT agreed to deliver a mortgage executed by Appellants for the Walton County property at issue, a security agreement executed by MTT granting Appellee a first lien and security interest in all of MTT's inventory and accounts receivable, a mortgage for an Alabama property, and a guaranty agreement executed by Appellant Scott Cleveland. Paragraph 8 of the Agreement provided in part, "Upon the expiration of the term or earlier termination of this Agreement, MTT shall pay to [Appellee] the outstanding balance due hereunder (including without limitation, all advances which have not

2

been repaid, and all Profit and Preferred Return)." Paragraph 11(d) provided that "[t]his Agreement may be amended only by an instrument in writing executed by the parties hereto." Paragraph 11(e) provided that "[t]his Agreement constitutes the entire agreement of the parties, and supersedes all understandings with respect to the subject matter hereof."

The parties' Mortgage provided in part as follows:

> Mortgagor is justly indebted to Mortgagee, having executed and delivered to Mortgagee that certain Profit Sharing Agreement . . . bearing the date of March 14, 2010 . . . according to the terms and conditions specified in the Agreement.

> In consideration of the indebtedness and to secure the payment to Mortgagee of the principal with interest and all other sums provided for in the Agreement and in this mortgage, including, but not limited to, any future advances that may be made by Mortgagee to Mortgagor in accordance with Paragraph 24 hereof, up to the maximum amount stated herein, and for performance of the agreements, conditions, covenants, provisions, and stipulations contained herein and therein, and in certain other agreements and instruments made and given by Mortgagor to Mortgagee in connection therewith, Mortgagor has granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey, unto Mortgagee that tract or parcel of land in Walton County . . . .

Paragraph 24 provided:

> <u>Future Advances:</u> Pursuant to F.S. 697.04, this mortgage shall secure not only the existing indebtedness evidenced by the note but also such future advances as may be made by Mortgagee to Mortgagor within 20 years from the date hereof to the same extent as if such future advances were made on the date of the execution of this mortgage. The total amount of indebtedness that shall be so secured by this mortgage may decrease or increase from time to time, provided that the total unpaid balance so secured at any one time shall not exceed a principal amount

3

greater than double the original principal amount of the loan plus interest thereon and plus any disbursements made for the payment of taxes, levies, or insurance on the property covered by the lien of this mortgage, together with interest on such disbursements.

Appellee filed its Mortgage Foreclosure Complaint against Appellants in 2013 and its Second Amended Mortgage Foreclosure Complaint in 2015. Appellee alleged that the Agreement and Mortgage were in default and claimed that it was owed $418,972.22 in principal. During the bench trial, one of Appellee's members and managers, Chad Tribe, testified. When asked to describe the money advanced to Appellants, Tribe explained:

> The initial advance was in the amount of $300,000. We advanced Cleveland and MTT based on the premise that he was going to go buy crude products, turn around and sell them, make a blend, whatever he does in the crude world. To secure performance on that deal, he had just purchased these two pieces of property, one in Florida and one in Alabama, and he showed us the closing statement. He said: Look, I will put these properties up to back up the amounts that you can put, up to $300,000.
>
> We looked at the properties. We became comfortable to go ahead and move forward, which we did.
>
> The first deal of 300,000 paid back with the profit, based on the Profit Sharing Agreement terms. The second deal went out very quickly after that in the amount of 265,000, I believe. That deal also turned around and paid off, along with a nice profit. Soon thereafter, the third deal went out and the – I want to say around $300,000. And then within a month, he had requested us to go up over and above the 300 that the Profit Sharing Agreement limited the initial advance to or the outstanding advance to. And we did reach $500,000 at one point. And in the third deal is where everything kind of started going the wrong way.

When asked if the last loan advance was for $500,000, Tribe replied, "I believe that

4

is correct." Tribe also testified regarding the credits made by Appellants toward the outstanding advances and the credit that was based upon the sale of the foreclosed Alabama property referred to in the Agreement. When asked if the additional advances were memorialized in any of the documents before the trial court, Tribe replied, "No."

Appellee's counsel argued to the trial court that the advances over $300,000 were secured by the Mortgage pursuant to the Mortgage's future advances clause. Appellants' counsel argued that there was "an absolute prohibition beyond $300,000 in the Profit Sharing Agreement" and that "if anything," the Mortgage's future advances language conflicted with the "never exceed" language in the Agreement. Appellants made the same arguments in their post-trial brief.

In the Final Judgment, the trial court found that the principal due on the Agreement and Mortgage was $419,069.64, implicitly agreeing with Appellee on the issue at hand and rejecting Appellants' argument to the contrary. With interest, taxes, and attorney's fees and costs and with a deduction for credited payments of $114,415.45, the trial court ruled that Appellants owed Appellee $382,047.23 and ordered the sale of the Walton County property. The trial court denied Appellants' motion for rehearing and motion to stay. This appeal followed.

Given that the issue on appeal involves contract interpretation, our standard of review is de novo. CitiMortgage, Inc. v. Turner, 172 So. 3d 502, 504 (Fla. 1st

5

DCA 2015). The cardinal rule of contractual interpretation is that when the language of a contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with the plain meaning. Columbia Bank v. Columbia Developers, LLC, 127 So. 3d 670, 673 (Fla. 1st DCA 2013). A contract is ambiguous when it is susceptible to more than one reasonable interpretation. Turner, 172 So. 3d at 504. "An ambiguous term in a contract is to be construed against the drafter." City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000).

This case involves the interpretation of both the parties' Agreement, which both deem a promissory note, and their Mortgage. A "mortgage is the security for the payment of the negotiable promissory note." Perry v. Fairbanks Capital Corp., 888 So. 2d 725, 727 (Fla. 5th DCA 2004). A promissory note is not a mortgage. Bank of N.Y. Mellon v. Reyes, 126 So. 3d 304, 308 (Fla. 3d DCA 2013). Instead,

> "The promise to pay is one distinct agreement, and, if couched in proper terms is negotiable. The pledge of real estate to secure that promise is another distinct agreement, which ordinarily is not intended to affect in the least the promise to pay, but only to give a remedy for failure to carry out the promise to pay. The holder of the note may discard the mortgage entirely, and sue and recover on the note."

Id. (quoting Taylor v. Am. Nat'l Bank of Pensacola, 57 So. 678 (Fla. 1912)). "When a conflict exists between the terms of a note and the provisions of a mortgage . . . the terms of the note should prevail." Lewis v. Estate of Turcol, 709 So. 2d 186, 187 (Fla. 5th DCA 1998). Effect should be given to both the note and mortgage,

6

however, "where there is no actual or necessary conflict." <u>Hotel Mgmt. Co. v. Krickl</u>, 158 So. 118, 119 (Fla. 1934).

Appellee argues, as it did below, that any advances it made to Appellants over the $300,000 provided for in the Agreement constituted future advances pursuant to Paragraph 24 in the Mortgage. We might agree with Appellee had the Agreement merely stated a principal sum of $300,000. However, the Agreement, which was expressly secured by the Mortgage and incorporated therein, provided that the "aggregate amount outstanding at any one time shall never exceed the sum of $300,000." While Appellants did not attend the bench trial or introduce any evidence to refute Mr. Tribe's testimony as to the amount of advances and credits, Mr. Tribe testified that Appellant Scott Cleveland said that he would "put these properties up to back up the amounts that you can put, up to $300,000." Appellant's intent is evidenced in the plain language of the Agreement. Although it is undisputed that Appellants requested that Appellee go above the $300,000 for what was described as the "third deal," the Agreement, which provided that the Mortgage at issue would secure Appellants' obligations, was not amended to reflect a $500,000 maximum advance amount. We note also that this was not a situation where the additional funds were advanced outside of the Agreement's one-year timeframe. Instead, according to Mr. Tribe, all of the advances were made within that time period.

To read, as Appellee does, the Agreement and the Mortgage to mean that the Mortgage secures anything over $300,000 up to $600,000, would render meaningless the "never exceed the sum of $300,000" language included within the Agreement. In reaching this determination, we are guided by the principle that a promissory note must prevail over a mortgage in the face of a conflict. See Lewis, 709 So. 2d at 187. We are also guided by the principle that any ambiguity caused by the Mortgage's future advances clause in the face of the Agreement's "never exceed" language must be construed against Appellee, which, according to Mr. Tribe, had both the Agreement and the Mortgage drafted. See City of Homestead, 760 So. 2d at 84. While Appellee alternatively contends that Appellants waived their right to make their argument on appeal, that contention was not made below, and the record provides no indication that the trial court made any findings on the issue or relied upon that ground in rendering its judgment. See Popular Bank of Fla. v. R.C. Asesores Financieros, C.A., 797 So. 2d 614, 619 (Fla. 3d DCA 2001) ("Generally speaking, the issue of waiver is one for the fact finder."); Lodestar Tower N. Palm Beach, Inc. v. Palm Beach Television Broad., Inc., 665 So. 2d 368, 370 (Fla. 4th DCA 1996) ("While an equitable estoppel argument may exist, that too, is a matter for the finder-of-fact to determine."); see also Bueno v. Workman, 20 So. 3d 993, 998 (Fla. 4th DCA 2009) ("[A]n appellate court cannot employ the tipsy coachman rule where a lower court has not made factual findings on an issue

and it would be inappropriate for an appellate court to do so.").

Based upon the foregoing, we reverse the Final Judgment and remand with instructions that the trial court recalculate Appellants' indebtedness to Appellee consistent with this opinion.

REVERSED in part and REMANDED with instructions.

BILBREY, J., CONCURS; BENTON, J. CONCURS WITH OPINION.

BENTON, J., concurring.

I join the court's opinion. Crown Financial, LLC, stated a single count complaint relying entirely on the Agreement and Mortgage under which it is not entitled to relief. Crown Financial, LLC, is not entitled to relief on grounds it did not plead or prove.