SHORT, J.:
**399 In this breach of contract action between Mac Papers, Inc. (Mac), Genesis Press, Inc. (Genesis), and one of Genesis's founders, Lawrence I. Kudeviz, Mac and Kudeviz filed cross-appeals. Mac, as Appellant/Respondent, argues the trial court erred in (1) finding Kudeviz's 1991 guaranty agreement was limited by Genesis's credit application, (2) finding Mac failed to prove that Kudeviz intended to be liable for more than $ 70,000, and (3) not addressing Kudeviz's liability under a 2008 guaranty agreement. Kudeviz, as Respondent/Appellant, argues the trial court erred in finding (1) he failed to terminate his personal guaranty, (2) he was not shielded from liability by equitable estoppel, and (3) he was not shielded from liability by the equitable doctrine of waiver. We affirm.
FACTS
On October 17, 1991, Genesis sought a $ 70,000 line of credit with Mac to purchase *878 office supplies for its printing business in Miami, Florida. On December 2, 1991, Genesis's three principals, Kudeviz, Barry Zissok, and Lewis Levin, signed a personal guaranty agreement, which stated in part:
For and in consideration of credit extended or to be extended by [Mac], its successors or assigns, to and at the request of [Genesis,] the undersigned, jointly and severally, do hereby unconditionally guarantee the payment at respective maturity dates of any and all indebtedness of any kind whatsoever, whether now due or which may hereafter become due .... This guaranty contains no limitations or conditions except as written herein, may be modified only in writing signed by the parties hereto, and is to remain in full force and effect until written notice of its termination is received by registered mail by [Mac], its successors or **400 assigns, at its office in Jacksonville, Florida, except the written termination of this guaranty by the undersigned shall be effective only as to future credit from and after the date [Mac], its successors or assigns, receives the aforesaid notice, i.e., any termination hereof as aforesaid shall not affect credits extended prior to its effective termination.
In 2007, Genesis moved its operation from Miami to Greenville. Between 1991 and 2008, Mac and Genesis conducted business without incident; however, on March 28, 2008, Genesis's Greenville operation suffered a devastating fire that disrupted their business. While Genesis litigated with its insurance carrier over coverage, Mac extended Genesis significant credit and flexibility so it could maintain its operation by restructuring some of its debt. As part of the restructuring, on December 9, 2008, Kudeviz, on behalf of Genesis, endorsed a note for $ 303,836.32 and signed a separate personal guaranty containing the same language as the 1991 guaranty. On February 2, 2009, Kudeviz endorsed another note for the sum of the first note, plus additional debt accrued during the interim time frame for a total of $ 401,852.51. In 2010, Genesis settled with its insurance company and paid Mac in full.
Between 2010 and 2012, Genesis accrued additional financial obligations to Mac, and by September 4, 2012, Genesis owed Mac $ 432,185.60. Mac filed a complaint for breach of contract against Genesis and breach of guaranty against Genesis's three principals, Kudeviz, Zissok, and Levin, for the unpaid balance of $ 432,185.60. Genesis filed bankruptcy, Zissok settled separately for $ 32,500, and Levin is now deceased. Accordingly, Mac sought $ 399,685.60 from Kudeviz, which was the difference between the outstanding debt and Zissok's settlement.
During trial, Mac called two witnesses, Tonja Van Zandt, its vice president and finance manager, and Craig Boortz, the general manager of its Greenville office and primary salesperson for Genesis's account. Kudeviz testified on his own behalf. Kudeviz claimed he terminated his personal guaranty by an email exchange with Boortz on July 12, 2010. As part of an email to Boortz regarding a sale, Kudeviz asked, "On a separate subject[,] is [Van Zandt] working on releasing my **401 personal note?" Boortz replied, "Yes she is and feel free to call her on anything related to the note."
The trial court found Kudeviz liable for Genesis's debt pursuant to the 1991 guaranty, but held Kudeviz's liability was capped at $ 70,000 by the terms of the credit application contemporaneously executed. This appeal followed.
STANDARD OF REVIEW
"When legal and equitable actions are maintained in one suit, each retains its own identity as legal or equitable for purposes of the applicable standard of review on appeal." Consignment Sales, LLC v. Tucker Oil Co. , 391 S.C. 266, 270, 705 S.E.2d 73, 75 (Ct. App. 2010) (quoting Corley v. Ott , 326 S.C. 89, 92 n.1, 485 S.E.2d 97, 99 n.1 (1997) ). "An action for breach of contract is an action at law." Electro-Lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter, Inc. , 357 S.C. 363, 367, 593 S.E.2d 170, 172 (Ct. App. 2004).
"In an action at law, on appeal of a case tried without a jury, the appellate court's standard of review extends only to the correction of errors of law." Id. "The trial [court's] findings of fact will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's *879 findings." Id. "The trial court's findings are equivalent to a jury's findings in a law action." Branche Builders, Inc. v. Coggins , 386 S.C. 43, 47, 686 S.E.2d 200, 202 (Ct. App. 2009). "Questions regarding credibility and the weight of the evidence are exclusively for the trial court." Id.
"In an action at equity, tried by a judge alone, an appellate court may find facts in accordance with its own view of the preponderance of the evidence." Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism , 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008). "However, we are not required to disregard the findings of the trial [court] who saw and heard the witnesses and was in a better position to judge their credibility." Straight v. Goss , 383 S.C. 180, 192, 678 S.E.2d 443, 449 (Ct. App. 2009). "Moreover, the appellant is not relieved of his burden of convincing the appellate court the trial judge committed error in his findings." Pinckney v. Warren , 344 S.C. 382, 387-88, 544 S.E.2d 620, 623 (2001).
**402 LAW/ANALYSIS
I. Kudeviz's Appeal[1]
Kudeviz argues he terminated his continuing guaranty as evidenced by the July 12, 2010 email exchange with Boortz; therefore, he was not liable for any of Genesis's unpaid debt. We disagree.
The contract between Kudeviz and Mac was created in Florida, and the parties agree Florida law controls its interpretation.
"The cardinal rule of contract interpretation is that when the language of a contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with the plain meaning." R.J. Reynolds Tobacco Co. v. Webb , 187 So.3d 388, 392 (Fla. Dist. Ct. App. 2016). "This is because the contractual language reveals the intent of the parties, and therefore, the plain language controls." Razin v. A Milestone, LLC , 67 So.3d 391, 396 (Fla. Dist. Ct. App. 2011).
"A guaranty is a promise to pay some debt (or to perform some obligation) of another on the default of the person primarily liable for payment or performance." New Holland, Inc. v. Trunk , 579 So.2d 215, 216-17 (Fla. Dist. Ct. App. 1991). "The law of Florida has recognized that a contract of guaranty [m]ay be continuing in nature." Fid. Nat'l Bank of S. Miami v. Melo , 366 So.2d 1218, 1221 (Fla. Dist. Ct. App. 1979). A guaranty
is said to be continuing in nature if it contemplates a future course of dealing during an indefinite period, or if it is intended to cover a series of transactions or succession of credits, or if its purpose is to give to the principal-debtor a standing credit to be used by it from time to time.
Id. "Thus, a continuing guaranty covers all transactions, including those arising in the future, which are within the description of contemplation of the agreement." Id. "A guaranty which provides it will run until further notice remains in force until revoked by the guarantor."
**403 Brann v. Flagship Bank of Pinellas, N.A. , 450 So.2d 237, 239 (Fla. Dist. Ct. App. 1984).
Although the guaranty was continuing, and Kudeviz could unilaterally terminate it, the signed agreement contained explicit instructions for termination. See Webb , 187 So.3d at 392 ("The cardinal rule of contract interpretation is that when the language of a contract is clear and unambiguous, the contract must be interpreted and enforced in accordance with the plain meaning."). In relevant part, the guaranty stated it was "to remain in full force and effect until written notice of its termination [was] received by registered mail by [Mac], its successors or assigns, at its office in Jacksonville, Florida." At trial, Kudeviz testified he signed the agreement, but admitted he did not comply with the termination requirements outlined in the contract. Accordingly, he failed to terminate the agreement and remained liable for Genesis's debt pursuant to the guaranty. See Razin , 67 So.3d at 396 (noting "the plain language controls" contractual interpretation *880 "because the contractual language reveals the intent of the parties").
Kudeviz also argues he was shielded from liability based on the equitable doctrines of estoppel and waiver. He contends Mac's conduct precluded it from enforcing the guaranty. We disagree.
"In its broadest sense, equitable estoppel is a means of preventing a party from asserting a legal claim or defense that is contrary or inconsistent with his or her prior action or conduct." Rodarte v. Univ. of S.C. , 419 S.C. 592, 601, 799 S.E.2d 912, 916 (2017) (quoting 28 Am. Jur. 2d Estoppel and Waiver § 27 (2011) ). "The essential elements of equitable estoppel are divided between the estopped party and the party claiming estoppel." Strickland v. Strickland , 375 S.C. 76, 84, 650 S.E.2d 465, 470 (2007).
Elements of equitable estoppel as to the party estopped are: (1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts. Essential elements of estoppel as related to the party claiming the estoppel are: (1) lack of knowledge and of means of knowledge of truth as to facts in question; (2)
**404 reliance upon conduct of the party estopped; and (3) prejudicial change in position.
Regions Bank v. Schmauch , 354 S.C. 648, 674-75, 582 S.E.2d 432, 446 (Ct. App. 2003) (quoting Zabinski v. Bright Acres Assocs. , 346 S.C. 580, 589, 553 S.E.2d 110, 114 (2001) ). "Estoppel cannot exist if the knowledge of both parties is equal and nothing is done by one to mislead the other." Evins v. Richland Cty. Historic Pres. Comm'n , 341 S.C. 15, 20, 532 S.E.2d 876, 878 (2000). "[R]eliance by the party seeking to assert estoppel must be reasonable." S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth. , 311 S.C. 29, 34, 426 S.E.2d 748, 751 (1993).
"Waiver is a question of fact for the finder of fact." Parker v. Parker , 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994). "A waiver is a voluntary and intentional abandonment or relinquishment of a known right." Janasik v. Fairway Oaks Villas Horizontal Prop. Regime , 307 S.C. 339, 344, 415 S.E.2d 384, 387 (1992). "Generally, the party claiming waiver must show that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all the material facts upon which they depended." Id. at 344, 415 S.E.2d at 387-88. "The doctrine of waiver does not necessarily imply that the party asserting waiver has been misled to his prejudice or into an altered position." Id. at 344, 415 S.E.2d at 388. "[W]aiver require[s] a party to have known of a right, and known that the party was abandoning that right." Strickland , 375 S.C. at 85, 650 S.E.2d at 470-71.
"Where an implied waiver is involved, the distinction between waiver and estoppel is close, and sometimes the doctrines merge into each other with almost imperceptible gradations, so that it is difficult to determine the exact point where one doctrine ends and the other begins." Janasik , 307 S.C. at 344, 415 S.E.2d at 388 (quoting 28 Am. Jur. 2d Estoppel and Waiver § 134 (1966) ). "Whether a party is barred by estoppel or waiver can only be determined in light of the circumstances of each case." Id.
First, Kudeviz failed to satisfy the elements for equitable estoppel. Particularly, Kudeviz failed to demonstrate he (1) lacked the knowledge of how to terminate his guaranty and lacked the means of obtaining this knowledge, or (2) that **405 he reasonably relied on Mac's conduct to his detriment. See Schmauch , 354 S.C. at 675, 582 S.E.2d at 446 ("Essential elements of estoppel as related to the party claiming the estoppel are: (1) lack of knowledge and of means of knowledge of truth as to facts in question; (2) reliance upon conduct of the party estopped; and (3) prejudicial change in position." (quoting Zabinski , 346 S.C. at 589, 553 S.E.2d at 114 )). Regarding knowledge of the termination procedure, it is possible Kudeviz legitimately did not know the process to which he agreed in 1991; however, he cannot claim he lacked the means to obtain this knowledge because the means of termination were unambiguously outlined in the guaranty agreement. Kudeviz testified he relied on Boortz's email that Van Zandt was "working on releasing [his] personal *881 note." Even if he did rely on this email, this "reliance" was not reasonable under the circumstances. See S. Dev. Land & Golf Co. , 311 S.C. at 34, 426 S.E.2d at 751 ("[R]eliance by the party seeking to assert estoppel must be reasonable."). During trial, Kudeviz testified he knew the guaranty was ongoing, knew Van Zandt was in charge of releasing guaranties, and admitted he never submitted any written documentation regarding the guaranty to anyone with Mac except the email to Boortz regarding his "personal note." Accordingly, the facts do not support Kudeviz's claim of equitable estoppel.
Second, Kudeviz failed to demonstrate Mac waived its right to enforce the guaranty's termination procedure. Kudeviz again relies on the July 12, 2010 email wherein Boortz stated that Van Zandt was working to release Kudeviz's "personal note." However, this did not amount to a voluntary and intentional abandonment of a known contractual right. See Janasik , 307 S.C. at 344, 415 S.E.2d at 387 ("A waiver is a voluntary and intentional abandonment or relinquishment of a known right."). Boortz testified he told Kudeviz to speak directly with Van Zandt regarding the release, which Kudeviz admitted he did not do. Boortz further testified he believed the July 12, 2010 email regarded the note and guaranty connected to the 2008 restructuring of Genesis's debt, rather than the continuing guaranty from 1991. Accordingly, the evidence does not support a finding that Mac waived its right to enforce the termination procedure.
**406 Based on the foregoing, we affirm the trial court's finding that Kudeviz failed to terminate his guaranty in accordance with the plain language of the contract and remained liable for Genesis's debt.
II. Mac's Appeal
Mac argues the trial court erred in finding the 1991 guaranty was limited by Genesis's contemporaneous credit application and Kudeviz did not intend to be personally liable for more than $ 70,000. We disagree.
"A contract is ambiguous when it is susceptible to more than one reasonable interpretation." Cleveland v. Crown Fin., LLC , 183 So.3d 1206, 1209 (Fla. Dist. Ct. App. 2016). "An ambiguous term in a contract is to be construed against the drafter." City of Homestead v. Johnson , 760 So.2d 80, 84 (Fla. 2000). Florida law applies "the doctrine of mutual construction," which provides that "two documents executed by the same parties as part of a single transaction regarding the same subject matter must be read and construed together." Sims v. New Falls Corp. , 37 So.3d 358, 361 (Fla. Dist. Ct. App. 2010) (quoting 37 Fla. Jur. 2d Mortgages and Deeds of Trust § 94 (2004) ). "However, it may not be invoked to override the clear and unambiguous expression of agreement of the parties to a transaction." Id.
At trial, Van Zandt admitted the credit application and guaranty agreement were part of the same transaction, so they must be construed together. See Sims , 37 So.3d at 361 (noting Florida law applies "the doctrine of mutual construction," which provides that "two documents executed by the same parties as part of a single transaction regarding the same subject matter must be read and construed together" (quoting 37 Fla. Jur. 2d Mortgages and Deeds of Trust § 94 )). The credit application stated Genesis sought only $ 70,000 of credit, whereas Kudeviz, by the guaranty agreement, assumed liability for "any and all indebtedness of any kind whatsoever, whether now due or which may hereafter become due." Therefore, we find this created an ambiguity in the agreement between the parties as to how much debt Kudeviz personally guaranteed. See Cleveland , 183 So.3d at 1209 ("A contract is ambiguous when it is susceptible to more than one reasonable **407 interpretation."). Because of this ambiguity, Florida law mandates the contract be construed against the drafter, in this case Mac, and supports affirming the trial court's finding that Kudeviz's liability was capped at the $ 70,000 outlined in the initial credit application. See Johnson , 760 So.2d at 84 ("An ambiguous term in a contract is to be construed against the drafter.").
Alternatively, Mac argues Kudeviz is liable for the total debt based on the 2008 guaranty. We disagree.
*882 At trial, Van Zandt explained Mac worked with Genesis to restructure some of its debt and "to help their cash flow situation" following the disruption in their business after the fire. On December 9, 2008, Kudeviz, on behalf of Genesis, endorsed a note for $ 303,836.32 and signed a personal guaranty containing the same language as the 1991 guaranty. On February 2, 2009, Kudeviz endorsed another note for the sum of the first note, plus additional debt accrued during the interim timeframe for a total of $ 401,852.51. Van Zandt testified Kudeviz's 2008 personal guaranty regarded only the "specific note" used to restructure Genesis's debt after the fire, which she acknowledged was paid in full after Genesis received its insurance settlement. Accordingly, the 2008 guaranty expired with the payment of the debt after the insurance settlement, and has no bearing on the liability Kudeviz maintained from the continuing guaranty established in 1991.
Based on the foregoing, we affirm the trial court's finding that Kudeviz's personal liability pursuant to the 1991 guaranty was capped at $ 70,000, and the 2008 guaranty was not applicable.
CONCLUSION
Based on the foregoing, the trial court's finding that Kudeviz is liable to Mac for the sum of $ 70,000 is
AFFIRMED.
HUFF and WILLIAMS, JJ., concur.

Although Mac is the Appellant-Respondent, we address Kudeviz's appeal first because he claims his guaranty agreement was duly terminated, whereas Mac's appeal addresses whether the guaranty was limited.